LOFTON *et al.*, relators, *v.* COLLINS *et al.*

1. Where equity, by reason of the residence of one of several codefendants living in different counties, has obtained jurisdiction of a case, such jurisdiction is not lost by the death, removal, or resignation of the resident defendant.
2. A municipal corporation which has, under its charter, exclusive power to " control and direct " the sale of liquors within its limits, has no authority, under such a provision, to organize a dispensary by appointing commissioners and authorizing them to sell liquors under certain terms and conditions prescribed in the ordinance. This is especially true when the people of the county wherein the dispensary is located had, prior to its organization, adopted the local option law which forbids the sale of liquors in that county.
3. The illegal sale of intoxicating liquors is a public nuisance, affecting the whole community in which the sale is carried on, and may be abated by process instituted in the name of the State.

Argued February 21, — Decided March 17, 1903.

Petition for injunction. Before Judge Sheffield. Early superior court. January 19, 1903.

*J. A. Laing, solicitor-general, L. L. Lyon,* and *A. G. Powell,* for plaintiffs. *H. M. Calhoun* and *S. S. Bennet,* for defendants.

SIMMONS, C. J. The town of Arlington, Georgia, is situated partly in Early county and partly in Calhoun county. Under its charter it has a mayor and five aldermen as a governing board. In December, 1902, the mayor and aldermen passed an ordinance establishing a dispensary for the purpose of selling intoxicating

liquors upon the terms and under the conditions and restrictions imposed by the ordinance. They elected three commissioners, one of whom resided in Early county and the other two in Calhoun county. These commissioners elected a dispensary manager, as provided for in the ordinance; this manager being a resident of Calhoun county. One of the aldermen resided in Early county, the others in Calhoun. The dispensary went into operation on January 1, 1903, when the sale of intoxicating liquors therein began. Shortly thereafter the solicitor-general of the Pataula circuit, of which circuit the county of Early composes a part, filed an information in the name of the State, against the mayor and aldermen and the dispensary commissioners and manager, seeking to enjoin the sale of liquors in such dispensary, on the ground that such sale was illegal and a public nuisance. Judge Sheffield of the Pataula circuit granted a rule nisi. The petition was served upon all the parties, and the hearing set for January 15. On the 13th, two days prior to the hearing, the alderman who resided in Early county and the dispensary commissioner who resided in that county resigned their offices, and their resignations were accepted. The defendants residing in Calhoun county filed a plea to the jurisdiction, on the ground that, because of the resignation of the only defendants residing in Early county (the county in which the petition was filed), the court had no jurisdiction of the case. The defendants who resided in Early county and who had resigned their offices asked that the proceedings be dismissed as to them, and that their names be stricken from the petition as parties defendant. The trial judge refused the injunction, on the ground that he had no jurisdiction. Affidavits were filed which tended to show that the dispensary was a public nuisance. The judge refused to consider these affidavits, basing this ruling on the ground just mentioned. The State, through its solicitor-general, excepted to these rulings and assigned error thereon, further assigning as error the refusal of the judge to grant the injunction upon all of the grounds alleged in the petition.

1. We think the trial judge was clearly wrong in refusing to entertain the petition or to grant the injunction, after the resignation of the Early county defendants, on the ground that he was without jurisdiction. The petition had been filed in that county and had been served upon all the defendants, including the two resid-

ing in that county.  This gave the court of Early county jurisdiction, not only of the defendants resident in that county, but of those residing in Calhoun county.  The mayor and aldermen of Arlington represented the municipality, which was located in both counties, the town being partly in each county.  The petition was filed against them in their capacity as officers of the corporation and its governing board.  As far as appears, the corporation is suable in either county, as it has at the same time residence in both counties.  Our code provides that if a party resides in one county a portion of the year and the remainder of the year in another, he may be sued in either.  This corporation resides in both counties all of the time.  The act of incorporation does not prescribe where its principal office shall be located.  When, therefore, the corporation was served with the petition by a process emanating from Early county, the court had full jurisdiction over it as an entity. But be this as it may, we are clear that the service of process upon the alderman residing in Early county, substantial relief being prayed against him, was sufficient to give the court jurisdiction, although the other aldermen and the mayor resided in another county.  All of them having been served with process before the hearing, and before the resignation of the one resident in Early county, such resignation could not deprive the court of jurisdiction.  After a court once acquires jurisdiction of the person and subject-matter, the death, removal from the county, or resignation from office of one of the defendants will not abate the suit, and the court will have power and authority to proceed to final judgment or decree.  The nuisance complained of here was within the corporate limits of the town.  It was that nuisance which it was sought to abate.  If the State's petition could be defeated by the resignation of an officer after the court had acquired jurisdiction, it would never be practicable to abate the nuisance.  If this were the rule and, after the resignation of the Early county defendants, a petition were filed in Calhoun county, there would be nothing to prevent the defendants residing in that county from resigning so as to defeat the jurisdiction of the court in that action.  If, after suit has been commenced against a municipal corporation or its mayor and aldermen, the terms of office of such mayor and aldermen expire before the trial, then, according to the ruling of the judge below, the suit would abate.  This can not be the law.  The same

reasoning would apply as well to the effect of the resignation of the dispensary commissioner who resided in Early county. He, with two others, under the pretended authority of the mayor and aldermen, had established what we shall hereafter show is a public nuisance. After service, he resigned his pretended office and his resignation was accepted. His resignation was an effort to allow the other wrong-doers to carry on and maintain the nuisance while he, the only one who resided in the county, by his resignation deprived the court of jurisdiction of the case. When the petition was filed he, in connection with others, had established and was maintaining the public nuisance sought to be abated. The aim and object of the petition was to suppress the nuisance and to prevent him and the others from carrying it on. It was therefore erroneous to hold that the nuisance could not be abated, simply because of the resignation of one of the parties who had been maintaining it even up to and after the service of the petition.

2. We might with propriety stop here and not pass upon the other branches of the case; but inasmuch as the bill of exceptions assigns error on the refusal of the judge to grant the injunction on all the grounds alleged, and inasmuch as counsel on both sides requested the court to decide the other questions, we shall dispose of them also. The mayor and aldermen of Arlington adopted an ordinance establishing a dispensary in the town for the sale of intoxicating liquors. The question is whether they had power to adopt such an ordinance. They claim that, under the charter power giving them exclusive right to control and direct the sale of liquors, they had the right to establish this dispensary. Their counsel who represented them in this court made an earnest and ingenious argument to show that under this clause in their charter they had power to establish the dispensary. He claimed that the mayor and aldermen were a part of the government of the State; that power had been given them by the legislature to act for the latter in legislating upon all local matters, and, the sale of liquors being under their exclusive control and direction, they could either allow the sale in barrooms or appoint their own agents to conduct a dispensary; that they had chosen the latter method and were authorized to do so. He contended that the mayor and aldermen being merely agents of the State, they could appoint other agents and make them State officers; and that State officers operating a dispensary were not

within the inhibition of the local option law. We have given considerable attention to the points made, but are unable to accept as sound the contentions of the learned counsel. We think it was not the intention of the legislature, by giving the mayor and aldermen the exclusive right to control and direct the sale of liquors, to authorize their sale in a dispensary of this kind. The context shows conclusively to our minds that this grant of power applied only to the power to control and direct the sale of liquors by private persons, real or artificial. The clause in section 13 of the act (see Acts 1890-1, vol. II, p. 871), immediately following this grant of power, shows this. The section provides "that the mayor and aldermen of said town shall have exclusive power and authority to control and direct the sale of ardent spirits, malt liquors, wines, beer, cider, and all other intoxicants, within the corporate limits of said town; to issue license for the sale of said articles and charge for the same a sum not less than five hundred dollars on each barroom, to be fixed by said mayor and council; to impose such restrictions, charges, conditions, and penalties as they, or a majority of them, may deem proper, whenever the exercise of the powers herein granted shall not be repugnant to the constitution or laws of this State." This clearly shows that the legislature had in mind the control and direction of barrooms or saloons, and not of a public dispensary. Besides, construing this act with reference to the time it was enacted, we know, as matter of history, that in this State dispensaries were very rare, perhaps only one existing at that time, and that it existed by express authority of a legislative enactment, made at the same session of the legislature at which was adopted the act now under consideration. This dispensary expressly authorized was established in Athens by a special act, and not as an amendment to the charter of the city in which it was to be located. A grant of power to a municipal corporation must be construed strictly, and such a corporation can exercise no powers except such as are expressly given or are necessarily implied from express grants of other powers. No power to establish a dispensary was here expressly given, and we think that none was necessarily implied. Before the adoption of this ordinance the people of the county of Calhoun, in which this dispensary is located, had adopted the provisions of the general local option law, which prohibits the sale of liquors in the county after its adoption. It is admitted by both

sides that the adoption of that law prohibited the sale of liquors in that county and prohibited the mayor and aldermen of Arlington from issuing licenses for the sale of liquors in that county.    There is no doubt that this is true, for the power given the mayor and aldermen to license the sale was repealed by the adoption of the local option law, as long as that law is of force in that county.

It was argued, however, that this law has no application to this case, because it does not apply to the State, the State not being named therein; that the mayor and aldermen, being agents of the State, had a right, under their charter, to establish a dispensary and make it a State dispensary.    It is true, as we have said above, that the mayor and aldermen have power to pass any laws, local in their nature, which would benefit the local community and which are not inconsistent with the laws of the State.    But we do not apprehend that any one could successfully maintain that the power thus given them could be exercised to repeal a law of the State. Indeed, the very section under which is claimed the power to establish the dispensary provides that the ordinances passed thereunder shall not be repugnant to the constitution or laws of this State.    Here, then, we have the assumption on the part of the agents of the State, to wit, the mayor and aldermen of Arlington, of the power to repeal a general law of the State forbidding the sale of liquors in that county.    Had the legislature endeavored to do so, it could not have conferred such a power on a municpal corporation, nor, indeed, could the legislature itself have repealed a general law by the enactment of a special one.    If the lawmaking power of the State could not constitutionally do this, it certainly could not confer the power to do so upon a subordinate body. While the mayor and aldermen may be the agents of the State to legislate for the welfare, peace, and good order of the town, they have no power to create other corporations or appoint other agents to do acts contrary to the laws of the State.    While the mayor and aldermen knew that they could not establish a dispensary and run it as a town institution, they attempted to do the same thing by electing three commissioners to maintain the dispensary, providing for salaries to these commissioners, and also providing that the proceeds of the business should be turned over to the municipal authorities.    The case of *Chambers* v. *Barnesville*, 89 *Ga.* 739, does not conflict with these views.    In that case it appeared that there

was at that time no law altogether forbidding the sale of liquors in Barnesville; the charter of the town authorized the municipal authorities "to regulate and control the sale in Barnesville of [liquors], for medicinal, mechanical, and sacramental purposes only." This court said that these words might be construed as conferring upon the mayor and council the power to restrict and limit sales to the purposes mentioned, and to that end to pass and enforce an ordinance prohibiting sales for any other purpose. The municipal authorities passed an ordinance giving the right to sell for these purposes to one of their own agents, in a dispensary. Chambers was not this agent, but kept what is now commonly known as a "blind tiger." He was convicted before the police court of Barnesville, and the conviction sustained upon certiorari. The case was brought to this court, where it was decided that, under the power given, the mayor and council had a right to prohibit the sale of liquor by any one except the agent they had appointed. The only authority the municipal corporation of Barnesville had was to regulate and control the sale of liquor for the above-mentioned purposes. While it is true that the mayor and council afterwards undertook to run a dispensary for the sale of intoxicating liquors on a large scale, they had no authority to do so, and this court so held in *City of Barnesville* v. *Murphey*, 113 *Ga.* 779.

3. The petition alleged that the sale was illegal, and was a public nuisance injurious to the people of the whole community. No one was shown to have been specially injured or damaged by the illegal sale. The affidavits tendered in evidence by the plaintiffs in error showed how the injury or damage was inflicted upon the people. It is claimed by counsel for the defendants in error that, although this may be true, if the sale is illegal the sellers may be punished under the penal law, and that equity will not restrain the commission of a crime. This position would have been tenable had the proceeding been instituted by a private individual, no property rights being involved. Equity, generally, will not interfere with the administration of the criminal law, The State, however, has an interest in the welfare, peace, and good order of its citizens and communities, and has provided in its laws for the abatement of nuisances when the public generally is injured. The Civil Code, § 3858, provides that, "Generally, a public nuisance gives no right of action to any individual, but must

be abated by a process instituted in the name of the State." See also section 4761, providing that the petition to enjoin a public nuisance must proceed for the public on information filed by the solicitor-general of the circuit. Even before the adoption of the code, in the case of *Mayor &c. of Columbus* v. *Jaques*, 30 *Ga.* 506, this court held that a court of equity has jurisdiction, and in a proper case may by injunction restrain a public nuisance, upon information filed by the solicitor-general. The reasoning of Lyon, J., in that case is clear and satisfactory to our minds on the proposition that equity will restrain a public nuisance whenever a proper case is made. See also the authorities cited in his opinion. We have in the present case an information filed by the solicitor-general of the circuit, and the nuisance is a public one, injuring the entire community. We see no reason why equity should not take jurisdiction and enjoin the nuisance.

*Judgment reversed. By five Justices.*