COUNTY OF GORDON *et al.* v. MAYOR &c. OF CALHOUN.

1. K., in pursuance of an obligation previously entered into, granted, sold, and conveyed to the judges of the inferior court of Gordon County certain described lands, including the tract in controversy, and inserted in the tenendum clause the following provision: "Provided, however, and it is hereby understood, that all that part of said piece of land which lies south of the road leading from the depot to the Oothcaloga mill, and which has not heretofore been laid off into town lots, shall remain as a common for the town of Calhoun, and no lots shall be sold or timber cut from the same without the joint consent of the judges of the inferior court of Gordon County for time being, and of the said John P. King." *Held*, that this constituted an express and immediate dedication as to that part of said land which lies south of the road leading from the depot to the Oothcaloga mill, as a common for the town of Calhoun, and the stipulation that no lots should be sold nor timber cut from the land without the joint consent of the judges of the inferior court and of the grantor was not a reservation of any property rights or title inconsistent with the use and occupation of said town as a common.

2. The land dedicated being situated in the town of Calhoun, that municipality is a proper party plaintiff to equitable proceedings instituted to preserve the use and prevent interference therewith.

3. The fact that the town of Calhoun had not been incorporated at the time of the dedication of the common would not destroy the effectiveness of the dedication, the organization and incorporation of the town being then contemplated and shortly thereafter accomplished, and the deed with all its terms and conditions having been accepted by the judges of the inferior court, and the town, after its organization and

incorporation, having accepted, used and enjoyed the common for a long period of time.

Argued April 19,—Decided August 8, 1907.

Equitable petition.    Before Judge Fite.    Gordon superior court. August 29, 1906.

In 1850, John P. King and the authorities of Gordon County made and entered into a contract whereby King agreed to sell and convey to the county authorities certain lands whereon the town of Calhoun is now situated, and the authorities agreed to accept the land, lay out the county site thereon, sell the lots, and divide the proceeds of the sale with King.    In 1851, in pursuance of the above contract, King conveyed to the justices of the inferior court of Gordon County the lands described in the contract, which included the lands in controversy.    The habendum and tenendum clause of said deed is as follows: "To have and to hold the said parcel of land [except five acres which had been sold to the State as a site for a depot on the W. & A. R. R.] unto the said judges of the inferior court aforesaid, and their successors and assigns, forever: Provided, however, and it is hereby understood, that all that part of said piece of land which lies south of the road leading from the depot to the Oothcaloga mill, and which has not heretofore been laid off into town lots, shall remain as a common for the town of Calhoun, and no lots shall be sold or timber cut from the same without the joint consent of the judges of the inferior court of Gordon County for time being, and of the said John P. King."    At the time this deed was executed the town of Calhoun had not been incorporated, but was incorporated by an act of the legislature approved the following year, 1852, and the lands to be used as a common are situated within the corporate limits of that town.

The town was laid out, lots were sold, and the proceeds divided as was agreed upon, and all that part of said tract of land which lies south of the road leading from the depot to the Oothcaloga mill was reserved as a common for the town of Calhoun, and no lots were sold nor timber cut from the same.    During the past year, Henry B. King, the successor in title of John P. King, and the authorities of Gordon County, acting jointly, undertook to convey a part of the "common" to one Gardner.    The mayor and aldermen of Calhoun filed a bill to enjoin the sale.    The defendants demurred to the petition, on the grounds, (1) that no cause of ac-

tion was set out, and (2) that if the petition did set out a cause
of action, the municipality was not a proper party plaintiff.    The
court overruled the demurrers, and the defendants excepted.

*T. W. Skelly* and *R. J. & J. McCamy,* for plaintiffs in error.
*Neel & Peeples,* contra.

BECK, J.    (After stating the facts.)

1. The petition in this case sets forth facts which constitute an
immediate and express dedication of the lands in dispute.    After
the clause of conveyance in the deed of John P. King to the
judges of the inferior court, we find in the habendum and tenen-
dum clause the following:    "To have and to hold the said piece
or parcel of land [except as before excepted] unto the said judges
of the inferior court aforesaid, and their successors and assigns,
forever; provided, however, and it is hereby understood, that all
that part of said piece of land which lies south of the road leading
from the depot to the Oothcaloga mill, and which has not hereto-
fore been laid off into town lots, shall remain as a common for the
town of Calhoun, and no lots shall be sold or timber cut from the
same without the joint consent of the judges of the inferior court
of Gordon County, for time being, and of the said John P.
King."    No other construction can be put upon the language that it
"shall remain a common for the town of Calhoun," and the import
of these words, as amounting to an express dedication, is not ren-
dered nugatory nor weakened by the clause following, and provid-
ing that "no lots shall be sold or timber cut from the same without
the joint consent of the judges of the inferior court of Gordon
County, and of the said John P. King."

Suppose that the dedication, instead of having been made ex-
pressly by the terms of the deed, had been made as in the case of
Cincinnati *v.* White, 6 Peters, 431, that is, a plan of the town had
been made and approved by the owner of the land, according to
which the thirty acres lying south of the road from the depot to the
Oothcaloga mill was set apart as a common for the use and benefit
of the town, and that lots had been sold in pursuance of and
with reference to this plan.    Clearly, under the direction of that
case and the numerous cases which have followed it, a plain case of
dedication would have been established.    But suppose further
that appended to the plan or map of the town as laid out, as a part
thereof, there had been the statement in writing that no lots should

be sold or timber cut from the land constituting the common without the consent of the owners of the land at the time of the dedication and certain designated public officers. Could this stipulation have had the effect to destroy the presumption of a dedication arising from the fact that lots had been sold with reference to the plan? It would seem not. Such a stipulation might have effect to prevent the municipal authorities from making any change in the condition or status of the common without the consent of the designated persons, but it could not have the effect of preserving to the original owners nor those in privity with them the power to change, alter, or dispose of the lands set apart in the plan of the town as a common. So we hold in this case that the plain language of the deed creates a common in the lands in dispute, and that, while the stipulation as to the selling of lots and cutting timber therefrom might operate as a restriction upon the power of the municipal authorities in dealing with the common, should they attempt to make changes therein, or dispose of any portion thereof, it was not a reservation of property right or title to the premises referred to, inconsistent with the right of the town and its inhabitants to use and enjoy them as a common.

2. The deed conveying the land declares the use for the town of Calhoun, and the land to be used as a common is situated within the corporate limits of that town. That being true, the town in its corporate capacity was the proper party plaintiff in these proceedings. "The municipality in which the land dedicated is situated, as trustee for the public, may maintain proceedings to enforce and preserve the use. Thus where lands are dedicated to the use of the inhabitants of a city or incorporated village for a public square, a bill may be filed in the name of the corporation to restrain the erection of a nuisance thereon or to protect the equitable right of the corporators to the use of the public square as such, and it may maintain ejectment to recover possession of the dedicated property from any one wrongfully withholding it." 13 Cyc. '502; Marsh *v.* Fairbury, 163 Ill. 401; Rhodes *v.* Brightwood, 145 Ind. 401.

3. The principle set forth in the third headnote is well settled. "The title to land which has been dedicated to public use, as for a highway or public square in a city, is in the city as trustee for the public; and it has been held, in the case of such a dedication of land in a proposed city, to be thereafter built, that the fee will

remain in abeyance until the proper grantee or city comes *in esse,* when it will vest in such city. A dedication to the public may exist where there is no city or town or corporate entity to take as grantee; and in such case, while the fee may remain in the individual who dedicates the land, he will be estopped from setting it up as against the public who may be interested in the use of the land according to its dedication. Nevertheless, when a dedication is made in an existing city, the city takes title as trustee. These statements are borne out by the following cases: Pawlet *v.* Clark, 9 Cranch, 292; Beatty *v.* Kurtz, 2 Pet. 566; Cincinnati *v.* White's Lessee, 6 Pet. 431, 435, 436; Barclay *v.* Howell's Lessee, 6 Pet. 498; New Orleans *v.* United States, 10 Pet. 662; Police Jury *v.* Foulhouze, 30 La. Ann. 64." Werlein *v.* New Orleans, 177 U. S. 390, 401.

*Judgment affirmed. All the Justices concur.*