MAYOR &c. OF ARLINGTON *et al. v.* CALHOUN *et al.*

Where a municipality is located partly in one county and partly in another, but has its seat of government—the council chambers, the office of the town clerk, the depository of the municipal records, the police court, the jail, and the voting place for all municipal elections—all in one county, the venue of suits against the municipality is in that county, unless the statute creating the municipality fixes the venue of suits against it or fixes its place of residence.

No. 639. May 16, 1918.

Mandamus. Before Judge Worrill. Early superior court. September 7, 1917.

H. M. Calhoun and six other plaintiffs, as residents and taxpayers of the town of Arlington, brought their petition for mandamus in the superior court of Early county against "The Mayor and Council of the Town of Arlington," the corporate name and style of the municipality, and against "B. M. Garrett, in his capacity as mayor of said municipal corporation, J. E. Martin, B. H. Askew Jr., Y. W. Fudge, G. M. Lofton, and B. C. Ray, in their capacity as councilmen and aldermen of said municipal corporation," alleging, that the municipality, the mayor thereof, and one of the aldermen were residents of Early county, and the other

aldermen were residents of Calhoun county; that on January 9, 1907, said municipality issued bonds to the amount of $25,000, for the purpose of installing, erecting, and maintaining a water-works and electric-light plant in· said town; and that said bonds were in the denomination of $1,000 each, the first being payable on September 1, 1911, and one each year thereafter up to and including September 1, 1935.  The petitioners sought mandamus absolute against the defendants, requiring them· to set aside as a sinking-fund certain amounts to be actually held for retirement of the bonds in question, and for other purposes, and requiring them to levy and collect the tax for the year 1917, in addition to the tax provided for the year 1917, "to make up the sinking-funds to the amount that each should be under the ordinances." Before pleading to the merits of the case the defendants entered their plea to the jurisdiction of the superior court of Early county, and alleged that this court was without jurisdiction, and that the superior court of Calhoun county had jurisdiction of the case, on the ground that at the time of the suit and until the hearing the defendants were residents of Calhoun county and not residents of Early county; for that while the corporate limits of the town of Arlington extend into and embrace a part of Early county and the town is situated in the two counties of Calhoun and Early, the seat of government of the municipal corporation is located in Calhoun county and has been since the town was created.  A statement of facts, agreed upon as correct by both parties, was presented and read to the court on the hearing of the plea to the jurisdiction. The essential portions of that statement are as follows: "(1) The town of Arlington is situated in two counties, Calhoun and Early, the entire business section of said town and about two thirds of the residence section thereof being in Calhoun county, and about one-third of the residence section being in Early county.  (2) The charter of said town does not prescribe where the principal office of the municipal corporation, which is named and styled in said charter, 'The Mayor and Council of the Town of Arlington,' or its residence for jurisdictional purposes, shall be located.  (3) The seat of government of said municipal corporation is located in Calhoun county,—the council chambers, the office of the town clerk, the depository of the municipal records, the police court, the jail, and the voting place for all municipal elections are in Calhoun

county, and have been ever since the town was created more than thirty-five years ago. All meetings and sessions of the governing authorities of said municipality are held in Calhoun county; all official acts of the mayor and council as such are done in Calhoun county; all trials of offenses in and against said municipality are held in Calhoun county; all municipal sales are had in Calhoun county; the voting precinct of the municipality is in Calhoun county; in short, all official business of said municipality is transacted in Calhoun county." The court overruled the plea to the jurisdiction, and granted a mandamus absolute. To each of these rulings the defendants excepted.

*B. W. Fortson,* for plaintiffs in error. *L. M. Rambo,* contra.

BECK, P. J. (After stating the foregoing facts.) We are of the opinion that the court erred in overruling the plea to the jurisdiction in this case. Four of the aldermen of the town of Arlington were residents of Calhoun county; the mayor and one alderman had their residence in Early county. We recite these facts because they are given a place in the statement of facts agreed upon by counsel for both parties; but our ruling is not based upon the recited facts as to the residence of the officials referred to. In our opinion the controlling fact is the location of the council chambers, the office of the town clerk, the depository of the municipal records, the police court, and the voting for all municipal elections. These are all in Calhoun county, and have been since the creation of the municipality more than thirty-five years ago. All meetings and sessions of the governing authorities of the municipality are held in Calhoun county. All official acts of the mayor and council as such are done there. The trials of offenses done in and against the municipality are held in said county. There the municipal sales are had. Our attention has not been called to any statute fixing the residence of a municipality where it is located partly in one county and partly in another, nor have we found such a statute; and we have reached the conclusion, after giving the question mature thought, that the determination of the residence of the municipality in such cases should be reached by analogizing the situation to that arising when the question is the determination of the venue of suits against other corporations. It is true that the venue in the case of other corporations is fixed by statute. In the case of Maisch *v.* New York, 193 N. Y. 460 (86 N. E. 458), it was said:

"A corporation necessarily resides, so far as a corporation can have a place of residence, within the territory of the sovereignty which created it. St. Louis v. Ferry Co., 11 Wall. 423, 429, 20 L. ed. 192. In this State the legislature creates municipal corporations, and confers upon them such powers and attributes as it sees fit. We think it has conferred upon every city in the State the attribute of residence in that county in which its principal place of business is located, so far as residence controls the jurisdiction of county courts. While we do not usually speak of a city as carrying on business, any more than a charitable corporation, still it does carry on the important business of government, and its principal place of business within the meaning of the statute under consideration is that place where its chief governmental functions are exercised. It was held of a city in Ohio, located in two counties, that its 'principal office or place of business' was in the county 'where its principal seat of municipal government is located.' City of Fostoria v. Fox, 60 Ohio St. 340, 54 N. E. 370." It appears from the laws of New York that the City of New York is a domestic corporation; and the conclusion reached in the case just cited is based upon the fact that, the City of New York being a domestic corporation, the law fixing the venue of suits against domestic corporations is controlling. Subsequently the law fixing the venue of suits against domestic corporations was changed in part, and that change is referred to subsequently in the case Eldred v. New York, 159 App. Div. 301 (144 N. Y. Supp. 402). See notes to the case of Piercy v. Johnson City, L. R. A. 1915F, 1029; also Marshall v. Kansas City, L. R. A. 1915F, 1025, note. We think the case at bar can be differentiated from that of *Lofton* v. *Collins,* 117 *Ga.* 434 (43 S. E. 708, 61 L. R. A. 150) which counsel for defendants in error insists is controlling here. That was a case in equity brought against the mayor and aldermen and against the dispensary commissioners and manager as joint defendants. At the time of the commencement of the suit one of the aldermen and one of the dispensary commissioners resided in Early county; before the hearing these two defendants resigned; and the court held that the superior court of Early county did not lose jurisdiction by reason of the resignation of the resident defendants. Clearly in that case the court had jurisdiction because of the residence of one of the commissioners. See *Railroad Commission* v. *Palmer Hardware*

*Co.,* 124 *Ga.* 633 (53 S. E. 193). The question of jurisdiction in the *Loflon* case, supra, did not depend upon the question of the residence of the municipality. The court did say in the course of its opinion, arguendo: "As far as appears, the corporation is suable in either county, as it has at the same time residence in both counties." But in the direct rulings made which control the case, as shown by the syllabi, no reference is made to the residence of the corporation. The ruling upon the subject of jurisdiction which appears in the first headnote holds that where the court had jurisdiction on the ground of having obtained jurisdiction properly at the time of the commencement of the suit, the court could not be divested of jurisdiction by the resignation of one of the resident defendants.

What we have said above is controlling in the case; and it was error for the court to overrule the plea to the jurisdiction.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*