# ATLANTA AND WEST POINT RAILROAD COMPANY *v.* CITY OF ATLANTA.

1. " Whenever municipal authorities have lawfully subjected the property of a railroad company to the public use for street purposes, then, and not not until then, can the railroad company be required to maintain a street crossing over its tracks." *Ga. R. Co.* v. *Union Point,* 119 *Ga.* 809, 816 (47 S. E. 183), and authorities cited.

2. The city may acquire the right to extend its streets across the right of way, by dedication. The City of Atlanta did acquire an easement across the railroad right of way, by virtue of the contract between Barth and the Atlanta Belt Line Company.

3. The contract mentioned in the next preceding neadnote, having become a part of the judgment rendered in the superior court, was binding on the Atlanta and West Point Railroad Company, the successor in title to the Atlanta Belt Line Company. The judgment being constructive notice, the former took its title with such notice, and subject to all rights of the City of Atlanta thereunder. While the dedication continues, the dedicator, and his grantee as well, is estopped from asserting any right in the soil inconsistent with the public easement.

4. " Where an easement has been acquired by grant, a mere nonuser without further evidence of an intent to abandon it will not constitute abandonment." *Mayor &c. of Savannah* v. *Barnes,* 148 *Ga.* 317 (96 S. E. 625, 9 A. L. R. 419).

5. Mandamus will not lie to enforce private rights under the contract, but it will lie at the instance of a municipality to enforce the discharge of a public duty growing out of such contract.

6. The City of Atlanta, having acquired an easement by dedication to a crossing over the railroad right of way, could legally proceed to require the railroad company to build a suitable bridge.

7. Under the allegations of the petition, mandamus is the proper remedy under the Civil Code (1910), § 2673, to require a railroad to construct a bridge across a street in a case of the character made. *People v. Union Pac. R. Co.,* 20 Colo. 186 (37 Pac. 610); Elliott on Roads & Streets, § 8; 26 Cyc. 367.

8. Section 385 of the City Code of Atlanta (Ga. Laws 1889, p. 819, § 16) is authority, and the only authority, granted to the city for it to require railroad companies to erect suitable bridges across their tracks and road-beds where the same cross public streets of the city. This power is in terms restricted to cases where the mayor and general council shall declare the same to be " necessary for the protection of human life." In the present instance the mayor and council have not declared that the erection of the bridge is " necessary for the protection of human life.". The resolutions passed do not comply, literally or in substance, with the statutory requirement. The court erred in refusing to sustain the general demurrer to the petition for mandamus.

No. 3423. SEPTEMBER 7, 1923.

Mandamus. Before Judge Bell. Fulton superior court. September 16, 1922.

The City of Atlanta filed a petition praying that the Atlanta and West Point Railroad company be compelled by the writ of mandamus to build across its railroad tracks and right of way at Berne Street, within the corporate limits of said city, a suitable bridge for the use of the general public in traveling in ·Berne Street. The allegations of the petition are, in substance, as follows: In 1900 the parties in suit number 7896, then pending in Fulton superior court, being a proceeding to condemn land for railroad purposes, and sounding Atlanta Belt Line Company *v.* C. F. Barth, entered into an agreement settling the litigation, which included the following provision: "Should the City of Atlanta or Fulton County hereafter extend Berne Avenue in such manner as to cross the line of the plaintiff's right of way at or near its station No. 221, extending thence through the property of the defendant Barth, the said plaintiff will allow the opening of said avenue across its right of way, and will construct and maintain a suitable bridge for the passage of persons and vehicles over its tracks at or near said station, the height of said bridge to be in the clear not less than twenty-two (22) feet above the top of the rails of the Belt Line Company." In 1914 the Atlanta & West Point Railroad Company acquired by deed of conveyance the entire properties of the Atlanta Belt Line Company, including its line of railroad, lands, leasehold estate, ways, rights of way, easements, and franchises, and the specified right of way acquired by the Belt Line Company in said condemnation proceedings and the agreement made in connection therewith. The city has full power and authority, under its charter, to open up, lay out, grade, pave, and improve streets within its corporate limits; it represents the public in procuring the enforcement of duties owing by corporations to the public. Berne Street, formerly known as Berne Avenue, has been in existence for more than twenty years. By authority of its mayor and council petitioner had recently laid out, opened up, and partially completed the work of grading Berne Street, which street, at the time of filing the petition, was being used by the public for travel, except that portion extending across the right of way and railroad track of the defendant, which is impassable because of the fact that in constructing the line of rail-

road at said point defendant's predecessor excavated for a depth of approximately twenty-two feet below the grade of Berne Street, leaving high embankments on either side at the points of approach from Berne Street; and it is impossible for persons and vehicles traveling on said street to pass over the railroad tracks and right of way of defendant, unless a suitable bridge be constructed and mained over the tracks and right of way. The place where defendant is now called on to build said bridge is on the property over which defendant's predecessor in title acquired a right of way through the condemnation proceedings mentioned above. It is the duty of defendant to construct and maintain a suitable bridge for this purpose, because of the stipulation quoted above from the agreement made in settlement of the litigation between Atlanta Belt Line Co. and Barth; and also because the Civil Code (1910), § 2673, provides that " All railroad companies shall keep in good order at their expense the public or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges, and make proper excavations or embankments, according to the spirit of the road laws." The safety, convenience, and welfare of the general public require the improvement of Berne Street and the construction of the bridge. The mayor and council of the City of Atlanta have passed resolutions calling upon the Atlanta & West Point Railroad Company to construct the bridge, one of which recited that " the safety, convenience, and welfare of the general public require, in the extension of Berne Street as aforesaid, a suitable bridge to be constructed and maintained for the passage of persons and vehicles over the right of way and tracks of said Atlanta & West Point Railroad Company at the point as designated." The railroad company has declined to construct the bridge; and the plaintiff's only remedy is by application for mandamus.

The respondent demurred to the petition, upon the grounds: (1) the allegations do not show the applicant to be entitled to mandamus; (2) that if respondent is liable under the obligations of the agreement between Atlanta Belt Line Company and Barth, such obligations cannot be enforced by the City of Atlanta, because it was no party to the agreement; (3) the respondent, not having been a party to said agreement, and never having assumed any of the obligations imposed upon the Atlanta Belt Line Company,

is not bound by said agreement; (4) the petition does not allege that the city has acquired the land upon which to found the bridge and lay out Berne Street across the property of respondent; the respondent is under no legal duty to furnish land for this purpose, and until the city has acquired the necessary land it has no legal right to mandamus to compel respondent to construct the bridge. Error was assigned upon the judgment of the court overruling this demurrer.

*Dorsey, Brewster, Howell & Heyman,* for plaintiff in error.

*J. L. Mayson* and *J. M. Wood,* contra.

GILBERT, J. 1. The first headnote does not require elaboration.

2. A municipality may acquire an easement by dedication. *Southern Ry. Co.* v. *Combs,* 124 *Ga.* 1004, 1010 (53 S. E. 508). Dedication is a question of intention; and intention by the Atlanta Belt Line Company to dedicate, on the day it made a settlement with Barth for a right of way and for an extension of Berne Avenue, is perfectly clear. The only thing remaining to be done to make the dedication effective was for the City of Atlanta to accept the dedication on the terms named in the agreement. The City of Atlanta has accepted the dedication by extending Berne Avenue on each side up to the right of way described in the agreement. This is shown explicitly by the resolution of the mayor and council. The agreement is not a promise to dedicate in the future, in the sense that something else was to be done by the Belt Line Company to make the dedication complete. If the agreement had read, " the said plaintiff now agrees to allow the opening of said avenue across its right of way if the City of Atlanta or Fulton County shall hereafter extend Berne Avenue in such manner as to cross the line of plaintiff's right of way at or near its station No. 221, extending thence through the property of the defendant Barth," it would have meant exactly what it means in its present shape. The agreement was for a consideration. The proceeding to condemn Barth's land was settled on the basis, in part, of the dedication. Barth was interested in land adjoining the right of way concerned, and hence was himself interested in the dedication; and it clearly appears from the agreement that the Belt Line Company made the dedication as a part of the agreement, just as the money to be paid to Barth was a part

of the agreement which induced his consent thereto. To relieve the Belt Line Company, if it owned the property now, from the dedication, would be to relieve it from a part of the burden imposed by its own agreement. *Town of Mableton* v. *Lowe,* 142 *Ga.* 723 (83 S. E. 665). No particular form of words is required for making dedication; it may be done orally or in writing, or it may be inferred from acts, and its acceptance may be shown by any acts of the municipality recognizing the existence of that street as one of the streets of the city. Any improvement on the street by the public authorities in recognition of the dedication may be regarded as an acceptance of the dedication. *Ellis* v. *Hazlehurst,* 138 *Ga.* 181 (75 S. E. 99). Acceptance by the city was to be in the future, but this does not affect the fact of the dedication. Town of Derby v. Alling, 40 Conn. 410. Where a dedication is made by deed, the grantor, the grantee, and the public are parties to the transaction, and the title to the land dedicated vests in the public for the uses named and on the conditions stated in the deed. Compare *Bayard* v. *Hargrove,* 45 *Ga.* 342; *Harrison* v. *Augusta Factory,* 73 *Ga.* 447. The following cases from courts of other jurisdictions bear out the proposition above announced. Surface v. Atacosa County, 244 S. W. 591; Phillips v. Laguna Beach Co., 211 Pac. 225; Waggeman v. North Peoria, 160 Ill. 277 (43 N. E. 347). Applying the principles just announced, we hold that the City of Atlanta did acquire an easement across the railroad right of way of the Atlanta Belt Line Company by virtue of the contract between Barth and said company.

3. It is contended that the Atlanta Belt Line Company, before it sold its property to the plaintiff in error, had excavated a deep cut where the street is proposed to be opened, more than two hundred feet wide and several hundred feet long; that after doing this it sold to the plaintiff in error all of its property, as stated in the petition; and that by reason of these facts the plaintiff is estopped from obtaining rights under the alleged agreement. We cannot agree to this position, for the reason that the dedicator is estopped, so long as the dedication continues, from asserting any right in the soil inconsistent with the public easement. *Brown* v. *East Point,* 148 *Ga.* 85 (95 S. E. 962). The cut was contemplated at the time of the dedication. As the agreement shows, the land acquired was through condemnation proceedings for a right

of way, and the parties must have had in view that if a cut was necessary it would be made. It was because of the contemplated cut that the agreement provided that the Belt Line Company would build a bridge for the use of the public when the dedication should be accepted in accordance with its terms. The cut, there-fore, was not inconsistent with the dedication; but even if it should be held so to be, it cannot be said that the railroad by making the cut could destroy the dedication. The sale would not destroy the dedication, because the right of way through Barth's land was ac-quired through condemnation proceedings, and the agreement in question was a part of the case; and whether it took effect as a deed or as a judgment of the court, the Atlanta & West Point Rail-road Co., as purchaser from the Belt Line Company, is charged with notice of dedication, as the agreement and the judgment of the court clearly showed the dedication, and the purchaser is charged with notice of the recitals in the agreement. *Georgia Southern Railroad* v. *Reeves,* 64 *Ga.* 492, 496; *Horne* v. *Macon Telegraph Publishing Co.,* 142 *Ga.* 489, 492 (83 S. E. 204, Ann. Cas. 1916B, 1212).

4, 5. The fourth and fifth headnotes do not require elaboration.

6. "All railroad companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws." Civil Code (1910), § 2673. In *Western & Atlantic R. Co.* v. *Atlanta,* 74 *Ga.* 774, it was held: "The duties required of railroad companies by the provisions of sections 706 and 707 of the Code of this State [Civil Code of 1910, §§ 2673, 2674] apply to streets as well as public and private road crossings." "The words, 'established pursuant to law,' appearing in the Civil Code [1895], § 2220 [1910, § 2673], following the words, 'the public roads or private ways,' limit and qualify only the words, 'private ways,' and have no reference to the words, 'public roads.'" *Southern Ry. Co.* v. *Combs,* supra. The city may by mandamus require a railroad to perform its statutory duty to the public in the matter of building bridges across its tracks, to the end that the street crossing may be safe and thus prevent in-jury to persons and property, rather than delay taking action against the railway until injury and damage has resulted. *County*

*of Gordon* v. *Calhoun,* 128 *Ga.* 781 (58 S. E. 360). In 18 Corpus
Juris, 118, § 144, speaking of dedications to the public, it is said:
" The municipality through its proper officers may maintain suits
to enforce and preserve the use for which the property was dedi-
cated." Again, on page 132, § 178, it is said: " The municipality
in which the land dedicated is situated, as trustee for the public,
may and should maintain proceedings to enforce and preserve the
use, although not the holder of the fee-simple title. This rule
applies to territory taken into the corporate limits after the dedi-
cation, as well as to territory included at the time of dedication.
It applies also although the municipality was not incorporated
at the time of the dedication. So it is not essential to the
right of a municipality to enforce and protect its right to
dedicated streets that it should have theretofore obligated itself to
maintain or repair the streets. Where lands are dedicated to the
use of the inhabitants of a city or incorporated village for a public
square, a bill may be filed in the name of the corporation to re-
strain the erection of a nuisance thereon or to protect the equitable
right of the corporators to the use of the public square as such,
and it may maintain ejectment to recover possession of the dedi-
cated property from the dedicator or from any one wrongfully
withholding it to the exclusion of the public." Applying the fore-
going principles, we hold that the City of Atlanta, having acquired
an easement by dedication to a crossing over the railroad right of
way, could legally proceed, consistently with its charter powers, to
require the railroad company to build a suitable bridge.

8. A municipality, being the creation of the General Assembly,
is invested with limited powers. When and under what conditions,
therefore, is the City of Atlanta empowered to institute a proceed-
ing to require a railroad to build a bridge, as indicated in the next
preceding division? What would be the case if the charter of the
city were silent on that question will not be considered, because it
is not involved in this case. The General Assembly have declared
precisely what power was delegated to the city on that subject, and
the maxim " expressio unius est exclusio alterius " applies. When
the legislature has made a clear and comprehensive declaration of
power on a given subject, such declaration is exclusive and con-
stitutes a limitation within which the municipality must act. In
the charter of the City of Atlanta the General Assembly of Georgia

granted power to the city as follows: "The mayor and general council of said City of Atlanta are hereby authorized and empowered to require all railroads and railroad companies to erect suitable bridges across their tracks and road-beds, where the same cross the public streets of said city, in all cases in which said mayor and general council shall declare the same necessary for the protection of human life." City Code of Atlanta, § 385; Ga. Laws 1889, p. 819, § 16. This is a clear and unambiguous declaration of the power granted by the General Assembly to the City of Atlanta for the purposes named. It is the only grant of power of that character by the General Assembly to the City of Atlanta, in so far as we have been able to ascertain from our investigation and from citations in the brief of counsel. This section of the charter of the city therefore provides the only rule by which we are to determine whether the City of Atlanta may require a railroad to build a bridge across its tracks. This grant of power cannot be enlarged by construction. The grant of power to a municipal corporation must be construed strictly, and such corporation can exercise no powers except such as are expressly given or are necessarily implied from express grant of other powers. *Lofton* v. *Collins,* 117 *Ga.* 434 (43 S. E. 708, 61 L. R. A. 150); *Walker* v. *McNelly,* 121 *Ga.* 114 (48 S. E. 718). The mayor and general council of Atlanta declared by resolution what they deemed to be the necessities of the situation. That resolution declared that "the safety, convenience, and welfare of the general public require" the improvement of Berne Street and the construction of the bridge. This is not a declaration that the building of the bridge was "necessary for the protection of human life." It is not a compliance with the charter requirements, literally or in substance. "Safety of the general public" may, in some instances, amount to the "protection of human life," but it does not necessarily amount to such in all cases. "The safety, convenience, and welfare of the general public" may have, and the court must know that it often does have, reference to dangers that do not involve human life, but only to happenings of less vital import. The mayor and general council of the City of Atlanta must be presumed to know the circumstances of the situation, and it must be presumed that they declared the facts truly as they existed. If human life was not menaced, but only the safety, convenience, and

welfare of the general public was involved, the city authorities were only justified in so declaring, and it is to be presumed that they did their full duty in the premises. It will also be assumed that, as all officers are presumed to perform their duty, when the situation becomes such that the building of the bridge in question is necessary to the protection of human life, the mayor and general council of the City of Atlanta will so declare. It was error to refuse to sustain the general demurrer to the petition.

*Judgment reversed. All .the Justices concur, except Russell, C. J., and Hines, J., dissenting.*

BECK, P. J., and ATKINSON, J., concurring specially. The petition of the plaintiff does not show that it had in any way acquired an easement across the right of way of the defendant company. The plaintiff could only claim this in virtue of the contract between the predecessor in title of the defendant and Barth; and the weakness of the plaintiff's case is that it does not show that it had opened a street or contemplated opening a street in accordance with the terms of the contract. The resolution adopted by the council, construed according to its express provisions, contemplated the opening of the street named "through the right of way" of the respondent. To merely open a street through the right of way of the respondent would not be opening such a street as was contemplated in the contract referred to, which provided that the railroad should construct a bridge in case the municipality opened a street "over the right of way of the railroad and thence extending through the lands of Barth," and there is nothing in this resolution to show that the street is to be "thence extended through the lands of Barth," independently of that contract. For these reasons we concur in the judgment of reversal.

HINES, J. I dissent from the principle announced by the majority of. the court 'in the eighth headnote and the corresponding division of the opinion, and from the judgment of reversal. The resolution of the mayor and council of Atlanta is tantamount to a declaration that the building of this bridge is necessary for the protection of human life. In my opinion the judgment of the court below should be affirmed.

RUSSELL, C. J. The Atlanta Belt Line Railroad made a contract in which, among other things, it agreed to build a bridge across its tracks where these tracks were crossed by a street which

had been dedicated to the city. This is a contract involving the performance of a public duty (building a public bridge) in which the public has an interest. The resolution of the city council conformed to the contract. No amount of argument can convince me that the trial judge erred when he, by mandamus, required the Atlanta & West Point Railroad Company to build the public bridge which its predecessor, the Atlanta Belt Line Company, had promised to build. Mandamus is the proper remedy. The demurrer was properly overruled. The city ordinance is inapplicable in view of the promise to build the bridge included in the original contract under which the railroad obtained its right of way. It is admitted that there was a dedication; and it must be admitted that a municipal corporation has the right by the general law of the State to require railroads running through the municipality to make suitable crossings (bridge or otherwise) across the railroad tracks (Civil Code of 1910, § 2673) ; and for that reason the trial judge could properly consider the municipal ordinance on the subject of bridge crossings as merely cumulative of a right already conferred by the laws of the State. Omitting any other consideration, the judgment of the trial judge was right because it was absolutely required by the contract, which is as binding as to the building of the bridge as it is to the gift of the land.