## 1827, 1828. JOHN CHURCH COMPANY *v.* ÆTNA INDEMNITY COMPANY; and *vice versa.*

1. A surety is one who becomes responsible for the debt, default, or miscarriage of another, the principal remaining bound therefor. A contract of suretyship differs from a guaranty in that the consideration of the latter is a benefit flowing to the guarantor. Civil Code (1910), § 3538. By a contract of fidelity-insurance, a fidelity-insurance company insures against loss caused by the default, neglect, or dishonesty of a trustee, officer, agent, or other employee, or such other person as may be re-

quired to give bond, or guarantees the performance of such bonds, as individuals do who sign the bonds of such persons as sureties. Civil Code (1910), § 2550.

2. In an action based upon a contract, the rights of both parties are to be determined by the contract, and the contract is to be so construed as to give effect to the manifest intention of the parties. Even though the contract in the present case be held to be one of fidelity-insurance, still the rule, that of two constructions the one favorable to the insured must be adopted, can not be availed of to refine away the terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties. While the general purpose of a contract of fidelity-insurance is full indemnity, the contract here involved plainly is confined to the faithfulness of the principal in the bond in his discharge of a certain defined duty, without regard to the period of time necessary for its performance. The amount of liability is equally plainly limited. Furthermore, the receipts for premiums clearly evidence that the premium was accepted merely as payment for a continuance of the same limited liability, and not as compensation for a yearly cumulative liability of a like amount.

3. When a bond guaranteeing the fidelity of an employee as to a specific duty, and not issued for a definite term, is renewed by the payment of a premium to "continue in force" the contract, there is still only one contract and one penalty; and receipts for premiums in renewal serve only to extend to a new period of time the indemnity provided by the original bond.

4. Inasmuch as the plaintiff refused to amend as required by the judgment on the demurrer, the court did not err in dismissing the petition.

Action on bond; from city court of Savannah—Judge Davis Freeman. March 6, 1909.

*William B. Stephens, Adams & Adams,* for plaintiff.

*Dodd & Dodd, Osborne & Lawrence, Alexander Akerman,* for defendant.

RUSSELL, J. The John Church Company filed a petition against the Ætna Indemnity Company to recover $7,785.55, alleged to be the liability of the defendant company upon one bond and two renewals thereof. It alleged that the liability assumed by the Ætna Indemnity Company on the original bond was $3,000, and that this liability was for any moneys misappropriated by J. P. Holmes during the period covered by the original bond, to wit, from September 24, 1904, to September 24, 1905; and that the indemnity company assumed a like liability for any misappropriations by Holmes upon the two renewals of the original bond, one extending from September 24, 1905, to September 24, 1906, and the other from September 24, 1906, to September 24, 1907. The bond itself was as follows:. "Know all men by these presents that

we, J. P. Holmes as principal and the Ætna Indemnity Company of Hartford, Conn., surety, are held and firmly bound unto the John Church Company in the sum of three thousand dollars, lawful money of the United States, to be paid to the said John Church Company of Cincinnati, Ohio, for which payment, well and truly to be made, we bind ourselves, our heirs, executors, and administrators, jointly and severally, by these presents. Signed and sealed this 24th day of September, A. D. 1904. The condition of this obligation is such that whereas the above-named J. P. Holmes was on the 11th day of August, A. D. 1904, appointed trustee in a case of bankruptcy in the district court of the United States for the southern district of Georgia, wherein McArthur Sons Company, a corporation, was bankrupt; and whereas the said J. P. Holmes has entered into a contract with the above-named John Church Company, under a decree of the United States court, to collect deferred payments on certain collateral owned and controlled by the said John Church Company; now, therefore, if the said J. P. Holmes, trustee as aforesaid, shall faithfully and truly account for all the moneys and assets which shall come into his hands and possession on the collection of the deferred payments on said contracts referred to in the said decree in the United States court, dated September 19th, 1904, and shall faithfully perform his duties in regard to the collection of said collateral, then this obligation to be void, otherwise to remain in full force and virtue." The two receipts are identical except as to date and as to the particular term for which the bond is said to be renewed or continued in force, one receipt being dated September 22, 1905, and the other September 24, 1906. The language employed in these receipts is as follows: "Received of J. P. Holmes, trustee, thirty dollars ($30), being renewal premium on the bond in the Ætna Indemnity Company, for the amount of three thousand dollars ($3,000), bonding him to the John Church Company of Cincinnati, Ohio, as trustee in bankruptcy of McArthur & Sons Co., bankrupts, said bond being hereby renewed and continued in force for the term of one year, to wit, from September 24, 1905, to September 24, 1906."

The controlling issue between the plaintiff and the defendant is whether the indemnity company, under the allegations of the petition and the exhibits attached thereto, is liable for the sum of $7,785.55 and interest thereon, or only liable to the extent of

$3,000. We think the lower court correctly held that the liability of the defendant company is limited, by the terms of the contract upon which the plaintiff bases its action, to an amount not to exceed $3,000. The petition alleges that the contract was entered into in pursuance of a decree granted in the district court of the United States for the eastern division of the southern district of Georgia, adjudging that certain properties, contracts, and notes, amounting to the principal sum of $30,645.59, were lawfully held by the John Church Company, as security for the indebtedness due them by McArthur & Sons Company, bankrupt, and directing J. P. Holmes, as trustee of the said bankrupt estate, to collect such sums as were due and as became due, and that 90 per cent. of the collections be paid over weekly, as collected, to counsel for the John Church Company. For the protection of the John Church Company, Holmes, as trustee, was by the decree required to furnish bond, with good and sufficient security, payable to the John Church Company, in the sum of $3,000, conditioned for the faithful performance of all his duties under the decree, and to properly account for all moneys collected, as and when therein provided. The plaintiff's theory, as contended for by its counsel, is that the original bond was made for the purpose of indemnifying it only for the year beginning September 24, 1904, and that the two receipts renewed the obligation for a like amount from September, 1905, to September, 1906, and from September, 1906, to September, 1907; and much stress is laid by learned counsel upon the use of the words "renewal" and "renewed," in the receipt signed by the agents of the indemnity company. We can very well agree to the definitions of these words as given by the authorities cited by learned counsel in his brief in the present case, but the use of the words "and continued in force," which immediately follow the word "renewed," in the receipts upon which the plaintiff relies, is of more than ordinary significance. Another fact of some significance is that although Holmes is the principal in the bond, he is not joined in the suit. If the renewal receipts increased the amount of the indemnity company's liability, instead of merely extending the time for which that liability was to continue, then it would seem that Holmes should be joined in the suit with the indemnity company, for the reason that the liability of the indemnity company, as surety upon the bond, could not be greater

than that of the principal, Holmes; and yet, should we construe the renewal receipts as equivalent to the execution of a new bond, Holmes has not obligated himself in any way other than by signing the original bond. Certainly he could not be sued upon the receipts for the premium; and it would seem that if he can not be sued, the indemnity company can not be sued.

The plaintiff alleged that the defendant was liable to it for $2,864.75 upon the bond, $3,000 upon the first premium receipt, and $1,920.80 upon the second premium receipt, making the total of $7,785.55 as aforesaid. The defendant, in its demurrer, challenged the petition on the ground, among others, that the action was upon a bond by the terms of which the defendant's liability was limited to $3,000, while the plaintiff sought a recovery of more than twice that amount. The demurrer further challenged the right of the plaintiff to recover $500 expenses, alleged to have been incurred in auditing the accounts of Holmes. The court sustained these grounds of the demurrer, and ruled that the case might proceed for the amount of $3,000, and ordered that the allegations as to the claim of $500 for expenses incurred be stricken. The court also restricted all statements as to the renewal receipts to the mere point of payment of the cost of the bond, and directed that the petition be recast by amendment so as to conform to the court's opinion. The plaintiff in open court refused to make the required amendments, and the court thereupon dismissed the case. The plaintiff has abandoned its exception to the judgment upon the item of $500, and this is out of the case; but it is still insisted on the part of the plaintiff that the bond and the two receipts were each a separate contract of fidelity insurance, each instrument insuring for one year's time and limited in liability to the period of one year from its date; and that the bond was not a contract of suretyship, binding during Holmes's incumbency in office, but was a contract of fidelity insurance, each receipt for premiums constituting an additional contract of insurance for one year.

The defendant contends that its contract was one of suretyship, whereby it bound itself in the sum of $3,000 for the faithful accounting by Holmes for all moneys and assets which had come into his hands by virtue of the said decree; that the bond was made in pursuance of the decree, which required a bond for $3,000 and did not require insurance, and that it did not require Holmes to

give security for a greater sum than $3,000, nor authorize him to give a bond limited to one year or other specified time, but required him to give bond for the performance of his trust during the continuance of his trust.   The liability of the defendant indemnity company (as the liability of any other defendant) is to be determined and measured by the terms of the contract.   There is, of course, a well-recognized difference between a contract of suretyship under section 3538 of the Civil Code and one of fidelity insurance as defined in section 2550, but we do not apprehend that the distinction is of any great importance in the determination of the present case.   It is not necessary to hold whether the contract in the present instance is one of suretyship or of fidelity insurance. It possesses some features of both.   In construing a contract the court should seek to effectuate the intention of the parties making it, and should ascertain that intention from the language employed in the instrument itself.   It seems perfectly plain to us, from a reading of the contract in the present case, and also from the decree under which the contract was procured, that the obligation of the defendant was to secure the John Church Company against any loss at the hands of Holmes which did not exceed $3,000; charging for this service the sum of $30 per annum during the continuance of the suretyship.   "Fidelity insurance," as the term is usually employed, is a contract whereby one, for a consideration, agrees to indemnify another against loss arising from the want of honesty, integrity, or fidelity of employees or others holding positions of trust; and while it may in form resemble a contract of suretyship, it is, in substance and effect, a contract of insurance, and the general principles governing the older forms of insurance, such as fire, life, and marine, are applicable to this more modern form of insurance.   People *v.* Fidelity & Casualty Co., 153 Ill. 25 (38 N. E. 752, 25 L. R. A. 295) ; People *v.* Rose, 174 Ill. 310 (51 N. E. 246, 44 L. R. A. 124) ; Guarantee Company *v.* Mechanics' Savings Bank, 80 Fed. 766, 772 (26 C. C. A. 146).

Viewed as insurance contracts, the contracts of an organization writing fidelity insurance are to be governed by the rules applicable to insurance companies, and when the contract is fairly susceptible of two constructions—one favorable and the other unfavorable to the indemnity company—the latter is to be adopted.   It is a familiar rule that ambiguities are to be construed most strongly

against the insurer. *Arnold* v. *Empire Life Insurance Co.*, 3 *Ga. App.* 685 (60 S. E. 470) ; Champion Ice &c. Co. *v.* American Bonding Co., 115 Ky. 683 (75 S. W. 197, 103 Am. St. R. 356) ; American Surety Co. *v.* Pauly, 170 U. S. 133, 144 (18 Sup. Ct. 552, 42 L. ed. 977) ; Vorse *v.* Jersey Plate Glass Insurance Co., 119 Iowa 555 (93 N. W. 569, 60 L. R. A. 838, 97 Am. St. R. 330) ; Wertheimer-Swarts Shoe Co. *v.* U. S. Casualty Co., 172 Mo. 135 (72 S. W. 635, 95 Am. St. R. 500, 61 L. R. A. 766). However, we do not see any ambiguity in the present contract. And, as was said by Mr. Justice Jackson in Guarantee Co. *v.* Mechanics' Savings Bank, 183 U. S. 419, "this rule can not be availed of to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties;" especially where, as in the present case, the contract was drawn in compliance with requirements of a decree which made clear the conditions intended to be imposed.

The real question in the present case is not whether the contract is one of fidelity insurance or an ordinary contract of suretyship, but rather whether the renewal receipts had the effect of continuing from year to year, as long as premiums were paid, the fixed liability on the bond, or of distinct undertakings, adding new and distinct liability year by year for any shortage of Holmes. In other words, did the parties by their contract intend that the defendant should assume any greater liability than $3,000; and was the payment of the premium anything more than a charge proportionate to the length of time that the liability of the indemnity company might continue? Practically the identical question now before us was decided by the Supreme Court of Tennessee in First National Bank *v.* Fidelity & Guaranty Co., 110 Tenn. 10 (75 S. W. 1076, 100 Am. St. R. 765). The Fidelity & Guaranty Company in that case gave a bond in the sum of $7,000, agreeing to indemnify the bank against all or any pecuniary loss occasioned by fraud or dishonesty of one W. W. Lea, a bookkeeper, occurring during the continuance of the bond or of any renewal thereof, and discovered during such continuance or renewal or at any time thereafter. The bond was dated May 1, 1898, and was renewed on May 4, 1899, from May 1, 1899, to May 1, 1900. The Court of Chancery Appeals found that from May 1, 1898, to May 1, 1899, the complaining bank sustained pecuniary loss of $7,217.50, occasioned by the dishonesty of the said W. W. Lea, and that during the currency of the renewal

bond, from May 1, 1899, to May 1, 1900, the bank sustained pecuniary loss of $13,157.20. The Court of Chancery Appeals held (as the plaintiff in error insists should be held in the present case) that the original bond and the renewal certificates were separate and independent contracts, covering different periods of time; that under the original bond the company was liable only for default occurring between May 1, 1898, and May 1, 1899, and under the last bond for default occurring between May 1, 1899 and May 1, 1900; and the court accordingly pronounced a decree for the complainants for $14,000. The Supreme Court of Tennessee reversed the judgment of the lower court, upon the ground that the renewal only renewed or continued the original bond, and that, under the plain terms of the bond, the maximum liability was $7,000, and no more, whether the default occurred during the currency of the original bond or during the renewal thereof; holding that while the renewal certificate might be a new contract, it was only a new contract as respects time,—that is to say, it extended the indemnity provided by the old contract to a new period of time. We shall hold in this case, as did the Supreme Court of Tennessee in that case, that when a bond guaranteeing the fidelity of an employee is renewed, there is still only one contract and one penalty, the renewal certificate serving only to extend the indemnity provided by the original bond to a new period of time.

It is clear to us that, so far as the defendant is concerned, the bond in the instant case is nothing more nor less than a contract of suretyship. The indemnity company stood surety for Holmes's good behavior in the matter therein referred to. Holmes is a party to the contract and the principal obligor. The indemnity company is a mere surety for the performance of Holmes's obligation to faithfully account for all moneys which he might collect for the account of John Church Company. If the contract were strictly one of fidelity insurance, issued by the indemnity company, it would seem that Holmes would not have signed the contract or have assumed any obligation under it, and the burden of the obligation for his proper conduct would have rested upon the indemnity company alone. Though, under section 2550 of the Civil Code, fidelity insurance companies may be sureties on bonds, yet ordinarily a contract of fidelity insurance is entered into between the insurer and the party for whose protection the contract is made, and the

insurer warrants the honesty or other quality of some employee of the insured, without the latter being a party to the contract. However, under the view of the Supreme Court of Tennessee in First National Bank *v.* Fidelity & Guaranty Co., supra, it would not matter if the contract in the present case were treated as one of fidelity insurance, for in the Tennessee case the contract involved was one of fidelity insurance, and the present case must, after all, depend upon the construction of the contract now before us. The case hinges upon the fact that the renewal certificates merely extend the time covered by the obligation, without increasing the amount of the liability.

The cases cited by the learned counsel for the plaintiff in error refer to term insurance, where the term of the contract is specifically fixed. And where there is a right of renewal, as was the case in *Mayor and Council of Brunswick* v. *Harvey*, 114 *Ga.* 733 (40 S. E. 754), this right is specifically conferred by the contract itself. Either an ordinary contract of suretyship or a contract of fidelity insurance might contain a provision limiting it as to the time the liability of the insurer should continue; but that is not this case. The contract binds both Holmes and the indemnity company to make good any default on the part of Holmes so long as he continues to act as trustee, within the statutory limitation of twenty years. There is nothing unreasonable in the fact that the indemnity company required the payment of the premium annually. As pointed out by the judge of the city court in his opinion in this case, the time necessary to accomplish a certain result may be uncertain; certainly ·in the present case it would appear to be uncertain how long a time would be necessary to enable a trustee to collect the assets which were to be turned over to the plaintiff. Ordinarily a contract in which an indemnity company assumes liability for the misconduct of another, or for his misappropriation of funds (such as the official bond of a county officer), is somewhat similar (as to the payment of premiums) to the usual policy of life-insurance, while a contract of fire-insurance usually limits the term during which the insurance continues. This distinction is not dependent upon the fact that the contract may be one of suretyship or one of fidelity insurance. In a contract of ordinary life insurance the obligation of the insurance company is to pay a stipulated sum at the death of the insured or the maturity

of the policy, and yet it is customary to pay the premiums annually, or semi-annually; so in this case the obligation was to make good any default of Holmes up to the amount of $3,000 which might occur during his incumbency as trustee, it mattered not when. And the very language of the receipts as to the purpose of the payment—the acknowledgment that the contract was thereby "continued in force"—evidences that unless the continuing premiums had been paid, the surety company would probably have asked the United States court to be released as surety upon the bond. In *Imperial Fire Insurance Company v. Coos County*, 151 U. S. 452, 463 (14 Sup. Ct. 379, 38 L. ed. 238), Mr. Justice Jackson, delivering the opinion of the court, says: "The rule is . . well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used; and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense." In *Guaranty Company v. Mechanics' Savings Bank*, supra, this doctrine was reaffirmed. In that case Judge Hammond, when the case was in the Circuit Court of Appeals (80 Fed. 766, 772), quoted the language of Mr. Justice Jackson, supra, and said: "It is a similar rule of interpretation that we shall look to the general purpose of the parties to the contract, to see what they intend to provide. . . The old-fashioned bond to secure fidelity of trust administration being a contract of suretyship, strictly, and not of indemnifying insurance, in the expansion of the modern contrivance of organizing incorporated companies to furnish a guaranty of fidelity these contracts naturally took the form of a bond, as these do, rather than that of a policy of insurance. But as to this subject-matter of indemnity, as well as to the multitude of others formerly covered by bonds to which the principle of insurance is being so comprehensively applied, the general object is that of a protection as broad at least as that afforded by the old-fashioned bond, the form of which has been assumed, and for which the modern contrivance is intended to be a substitute. Marine, fire, or life insurance against the destructive forces of nature is not quite the same thing as an insurance against the dangers of dishonesty; and, the risk being of an entirely different nature, the courts must interpret the contract in view of this difference, applying the words used to the purpose of covering the peculiari-

ties of the risk assumed on the one hand, and on the other intended to be discarded or shifted to others. And if these new contracts, whatever their form, are to be turned into contracts of insurance, the courts will be careful not to again perplex themselves with regrettable technicalities of law such as have sometimes crept into the older contracts of insurance, and have required statutes for their removal. In marine, fire, and life insurance, it is not an unreasonable assumption that the owner knows more intimately than others can know the conditions which are material to the risk assumed, and it is therefore not unreasonable to require him to disclose those conditions to the insurer, and to hold him strictly to that duty. But in an insurance like this the insurer and the insured deal at arm's length with each other, and upon a plane of equal opportunity for information. Indeed, the risk does not depend so much on conditions of fact as upon a mere judgment about human character in the subject of the insurance,—his individuality or moral qualities. About this the insurer can inform himself, and the insured is not presumed to know anything, as in the case of the owner of a property or of a life which has been insured. Hence it is not unreasonable to hold the insurer to his risk in the broadest sense that is required to indemnify the assured for any loss by dishonesty which falls fairly within the employment of the person whose honesty is guaranteed, and to permit no escape except by lines of retreat or avenues of deliverance clearly defined, well marked, and mutually understood as part of the contract, evidenced by the use of unambiguous language for that purpose. It would be contrary to public policy to inconsiderately allow the protection afforded by this new insurance to the vast business interests of the country, in public administration, as elsewhere, to be endangered by any lesser indemnity than that of the old form by bond, which is being so rapidly displaced, the new contracts being offered by the companies as superior to the old in safety. The courts should interpret them with a view of accomplishing what the companies propose to secure, by adhering strictly to the rule we have quoted in the language of Mr. Justice Jackson."

Construing this contract according to the rules laid down in these two decisions, and keeping in view the fact that the John Church Company can not recover from the indemnity company more than it could recover from Holmes on this bond, we are clear

that the judge rightly held that the extent of the liability was $3,000.

2. The judge directed the plaintiff to amend the petition so as to conform to the ruling above stated; and, upon the plaintiff's refusal to comply with this direction, he dismissed the suit. That was not error. See *Hicks* v. *Hamilton, 3 Ga. App.* 118 (59 S. E. 331).

*Judgment affirmed on the main bill of exceptions. Cross-bill of exceptions dismissed.*