25458. LIFE & CASUALTY INSURANCE COMPANY *v.* SMITH.

DECIDED JULY 14, 1936.

*J. H. Paschall,* for plaintiff in error. *Y. A. Henderson,* contra.

STEPHENS, J. Mrs. W. L. Smith brought suit against the insurance company on two industrial infantile whole-life policies which insured the life of her infant son. It was alleged in the petition that the conditions of the policies as to payment of premiums, proofs of death, etc., had been complied with; that demand for payment had been made and refused, the refusal to pay being termed "wilful and malicious;" and that the benefits due under the policies were $248, together with damages in the sum of $62 for failing to pay the policies when due, and a reasonable attorney's fee for filing and prosecuting the suit. In its answer the defend-

ant denied liability for the sums claimed by the plaintiff, and set up a special defense to the effect that the policies contained a provision, that, "Within two years from the date of issuance of this policy, the liability of the company shall be limited under the following conditions, to the return of the premium paid thereon: . . If the insured before its date has been rejected for insurance by this or any other company, order, or association, or has been attended by a physician for any serious disease or complaint; or has had before its date any pulmonary disease or chronic bronchitis, or cancer, or disease of the heart, liver, or kidney;" and that the insured was treated by and attended by a physician, Dr. R. C. Maddox, for congenital syphilis, on April 7, 1934, and on numerous other dates before the issuance of the policies; that congenital syphilis is a serious disease; that the defendant had tendered to the plaintiff the amount of premium paid on the policies which was refused by the plaintiff; and that the defendant was not liable to the plaintiff for any amount over the return premiums. The jury returned a verdict for the plaintiff on which judgment was entered against the defendant for the amount of the policies, besides damages and attorney's fees. The defendant moved for a new trial. The motion was overruled, and the defendant excepted.

■ A motion was made to dismiss the writ of error, on the ground that the bill of exceptions named the plaintiff in error as "Life & Casualty Insurance Company," whereas the record showed that the judgment complained of was against "Life & Casualty Insurance Company of Tennessee." The plaintiff in error moved to amend the bill of exceptions by the record, so as to designate the plaintiff in error by the name shown in the record. The amendment is allowed and the motion to dismiss is overruled. Code, §§ 6-1202, 6-1309. *Dupon* v. *McLaren*, 63 *Ga.* 470; *White* v. *Cook*, 73 *Ga.* 164; *Ramey* v. *O'Byrne*, 121 *Ga.* 516 (49 S. E. 595); *Galloway* v. *Vestal*, 135 *Ga.* 707 (70 S. E. 589).

■ The evidence showed that the policies were dated October 8, 1934, and the insured child died February 1, 1935. Dr. R. C. Maddox testified for the defendant, that Mrs. Smith brought the child to him eleven times according to his records; that he treated it from April 7, 1934, until February 1, 1935; that he made an examination of the child in April, 1934, and found it suffering from congenital syphilis, with which the child continued to be

affected during that period of time; that this disease would be classified as a serious disease; that no representative of the company had any communication with him (witness) at the time the policies were written; that the general agent of the company called to see him after the papers had been filled out and filed; that he told Mrs. Smith of the blood reaction on April 14; that the Wasserman test was taken and showed positive, that he found the child covered with sores, liver, and spleen markedly enlarged, lips were sore and ragged, and it had a definite snuffle; that on June 29, 1934, it had improved remarkably; that the next time he saw the child was on January 28, 1935; that on January 31, 1935, he found evidence of pneumonia; that the child died on February 1, 1935, from specific luetic meningitis complicated by bronchial pneumonia; and that in his opinion as a practicing physician the child's death was caused by congenital syphilis. In contradiction to this testimony several physicians testified for the plaintiff. Dr. Vansant testified that he attended the child in January, 1934, when it was about four months old; that he looked the baby over very thoroughly; that it was suffering from an acute cold and digestive disturbances at that time; that he did not see any evidence of congenital syphilis, that he next saw the child early in April, 1934, when it was suffering from digestive disturbances, and was very much nauseated, and had a more or less diarrhœal condition, that he saw the child again just previously to the time of its death, and made an examination; that it began with spasmodic croup, developing from that bronchial pneumonia; that he did not find any evidence or symptoms of syphilis, that he. saw the child two or three times before it was carried to the hospital, and he saw no evidence or symptoms of syphilis or luetic meningitis. Dr. Erwin testified that he saw the child just before it died, and made an observation of it; that it was suffering with bronchial trouble; and that he did not see any symptoms of congenital syphilis or anything that indicated luetic meningitis. Dr. Barnett testified that he was employed by the insurance company to examine the infant for insurance; that he made the inspection; that he did not see any indications of syphilis of any kind; that as to his observation the child was a normal and healthy child at that time; that he did not make a physical examination,—just an objective inspection, "just what you could see." He.evidently had

his report before him, for he identified his signature and further testified: "I asked his mother what sickness he had had. I put Dr. Maddox down here, as the one who had been waiting on him. In answer to that question—What doctors had treated him within the last five years, I asked the mother, the woman that said she was the mother, this lady here. That report, after I made it out, I think I mailed it to Rome. I would mail all reports like that to Rome." Both parents testified they had never had syphilis.

The question whether the testimony of Dr. Maddox should have been given greater weight than the testimony of the other physicians and the testimony of the parents was a matter for the jury to determine, and the verdict must be taken as including a finding that the child never had congenital syphilis. This finding was not unwarranted by the evidence.

■ But there is a further question on the construction to be given that provision in the policy by which it is claimed that the liability of the defendant was limited in certain cases to a return of the premiums paid on the policy. That provision as set out in the defendant's answer was as follows: "Within two years from the date of issuance of this policy, the liability of the company under the same shall be limited, under the following conditions, to the return of the premium paid thereon: (1) If the insured before its date has been rejected for insurance by this or any other company, order or association, or has been attended by a physician for any serious disease or complaint; or has had before its date any pulmonary disease or chronic bronchitis, or cancer, or disease of the heart, liver, or kidney." The phrase, if the insured "has been attended by a physician for any serious disease or complaint," can mean either if the insured has been attended by a physician for something which he took to be a serious disease or complaint, or it may mean if the insured was attended by a physician because of or on account of any serious disease which in fact existed. If in fact the child did not have syphilis, this disease could not have caused the physician's attendance. Where there is doubt as to the meaning of a policy, the rule is that that construction will be adopted which is the more favorable to the insured. For this reason we do not think that the opinion of the physician as to the disease for which he attended the child should be held to be conclusive. Evidently the court and counsel did not so regard

it in the trial, as no objection was made to the evidence offered by the plaintiff on this point, and the judge has approved the verdict.

The case of *Gray* v. *Life & Casualty Ins. Co.*, 48 *Ga. App.* 80 (171 S. E. 835), differs materially in its facts from this case. In the *Gray* case there was no dispute that the insured had tuberculosis, and was treated for it sometime before the issuance of the policy, and died from it in less than three months from the date of the policy. Here not only was it denied but the jury in effect found that the deceased infant did not have congenital syphilis. In the present case, while it seems there was an application for the policies, it was not put in evidence. It also appears that the examining physician made a report to the company, but this was not put in evidence. There was a conflict between Dr. Maddox and Mrs. Smith on one point. The doctor said that he told her on April 13, 1934, what the child was suffering with and told her of the blood reaction on April 14. Mrs. Smith testified: "At the time I carried this child to Dr. Maddox he told me the diet did not agree with him, and that he had indigestion. He said that the child was suffering with congenital syphilis. He said in January he thought so. That is the time that it died. That is the first time he ever told me that." On the whole case there is no evidence or claim of misrepresentation by the plaintiff in order to procure the insurance. The testimony of the examining physician shows that Mrs. Smith gave him the name of Dr. Maddox as the one who had been waiting on her child. The examining physician put that fact in his report and mailed it to Rome, presumably to some authorized agent of the company. The jury could infer that the company had actual notice of the fact that Dr. Maddox had been attending the child. In *Rome Ins. Co.* v. *Thomas,* 11 *Ga. App.* 539, 543 (75 S. E. 894), this court said: "The purpose of the inquiry as to the attendance of a physician is to enable the company, by inquiry of the physician, to ascertain whether the person whom it is proposed to have insured is in fact in good health." Dr. Maddox testified: "No representative of the company had any communication with me at the time these policies were written. The general agent of the company called to see me after the papers had been filled out and filed." What passed between the general agent and the doctor does not appear. Under

the circumstances the question whether the company, having actual notice of the fact that the child had been treated by Dr. Maddox and failing to inquire as to the reason, was estopped from reducing the amount of the policies to the amount of the premiums paid, need not be decided.

■ Complaint is made of that part of the verdict which found damages and attorney's fees against the defendant. This part of the verdict is separable from the other part. The petition does not allege the date when the insured died, or the date when the proofs of death were furnished. It does allege a demand on February 16, 1935, for payment of the policies, plus damages and attorney's fees. The evidence shows that the child died on February 1, 1935, but does not show when the proofs of death were furnished to the company. The record does not affirmatively show that the demand for payment of the insurance was made at a time when the right to demand it existed. In this condition of the record, the finding for damages and attorney's fees can not be sustained. *Philadelphia Fire &c. Ins. Co.* v. *Burroughs,* 176 *Ga.* 260 (2) (168 S. E. 36); *National Casualty Co.* v. *Borochoff,* 45 *Ga. App.* 745 (165 S. E. 905). Moreover the Supreme Court has said: "Damages and attorney's fees can in no case be awarded where the defendant has any reasonable ground for contesting the right of the plaintiff." *German American &c. Co.* v. *Farley,* 102 *Ga.* 720, 745 (29 S. E. 615).

■ The special grounds of the motion do not present sufficient reasons for the grant of a new trial. The first and second grounds relate to the admission of testimony on the subject of attorney's fees. This need not be considered, since the recovery of damages and attorney's fees will be set aside. The third ground complains that the court erred in refusing to order a mistrial on account of certain objectionable argument by counsel for the plaintiff. Since the record shows that the court promptly rebuked counsel and instructed the jury to give no attention to that kind of argument, but to base their verdict only on facts, a new trial can not be granted on that ground. The fourth ground alleges that the court erred in not directing a verdict for the defendant on motion. It has been repeatedly held that it is not reversible error for the court to refuse such a motion. The judgment is affirmed on condition that the plaintiff write off the damages and attorney's

fees from the verdict at the time the judgment of this court is made the judgment of the court below; otherwise the judgment will be reversed.

*Judgment affirmed on condition.* *Jenkins, P. J., and Sutton, J., concur.*