## ADAMS *v.* RICHMOND COUNTY.

No. 13869.   OCTOBER 16, 1941.

*W. D. Lanier,* for plaintiff in error.

*Isaac S. Peebles Jr.,* contra.

GRICE, Justice. ■ The plaintiff in error specially demurred to the county's petition as amended, the only ground of special demurrer argued in the brief relating to an allegation that recently the Federal government requested the co-operation of Richmond County in bringing about the pavement of the avenue, as a defense project, at the Federal Government's expense. His insistence is that such allegations are irrelevant, immaterial, improper, and prejudicial. Whether this position be well taken or not it is not

necessary to decide, since for reasons hereinafter discussed the county had the right to pave the entire width of the avenue, regardless of its reasons or motive therefor, or whether done at the request of the general Government as a defense project, or not. In any view of the matter the result would be the same, with the objectionable portion of the pleading stricken or left in.

■ Error is assigned on the ruling admitting in evidence, over objection, so much of what is referred to as the plat book, and also as the county plat book, as the plaintiff in error claimed to be irrelevant, to wit, a plat showing Ohio Avenue as a Richmond County road fifty feet wide. Accompanying the plat made by George W. Summers were certain resolutions of the Board of Commissioners of Roads and Revenues of Richmond County, one of which recited that Summers had made a proposition to the commissioners that he would complete the county plat book in its entirety, and that said plat book, in addition to showing the tracts and parcels of land of Richmond County, "shall also show the state and county roads traversing Richmond County;" and an agreement to pay Summers on completion thereof a sum of money therefor; a resolution ordering that he be paid; an extract from the minutes containing a resolution that "the matter of giving residents of the Tuxedo Park, within the county, relief as to street conditions, and that it be done as soon as possible." The accompanying plat purported to be one of Tuxedo Park, showing the roads therein. Ohio Avenue was traced thereon, the bill of exceptions reciting that it showed Ohio Avenue as a Richmond County road fifty feet wide. The plat bears no date. The resolution of the county board agreeing to have it made is dated April 3, 1928. The date of the resolution ordering final payment to Summers "in full payment of services rendered" is December 22, 1930. The objection to this evidence was as follows: Mr. Lanier: "My objection to it is that it only shows they employed Mr. Summers to make a survey of the roads of Richmond County, and that Mr. Summers made the plat, as indicated by his name, but the county commissioners nor any authorized authority of the county never accepted the plat at any time as the official plat of the roads of Richmond County, and I am objecting to it because it does not show that Ohio Avenue was accepted as a public road by reason of the plat having been accepted, or any of the plats made by Mr. Summers having been accepted. All the evidence shows

that they were put of file and are now in the possession of the county, and because it is irrelevant and immaterial, and should not be admitted in evidence."

In view of the issue made by the pleadings, to wit, whether or not there had been an acceptance on the part of the authorities of Richmond County of Ohio Avenue, the evidence was properly admitted. The objection itself admits that the plat was on file and in the possession of the county authorities, made by one who contracted with them to execute a plat which should show the state and county roads, and it showed thereon this particular avenue as a Richmond County road fifty feet wide. Acceptance may be manifested by the recognition of the street in the official maps of a county, prepared under the authority or direction of its proper officials. Steele *v.* Sullivan, 70 Ala. 589; City of New Orleans *v.* Carrollton Land Co., 131 La. 1092 (60 So. 695); City of Corsicana *v.* Anderson, 33 Tex. Civ. App. 596 (78 S. W. 261). Compare *Penick* v. *County of Morgan,* 131 *Ga.* 385 (6), 392 (62 S. E. 300).

■ It is not insisted that the judgment granting the injunction was erroneous because there was no such interference with the county's work as would justify the injunction if otherwise it was proper to grant it; but the contention is that the county has no right to use the ten-foot strip for road purposes. The evidence demanded a finding (and indeed no position to the contrary is taken by the plaintiff in error) that Dyer, the then owner, dedicated the whole of Ohio Avenue to public use, its width being fifty feet, and that the county for more than forty-one years regularly worked as a road a thirty-foot strip in the middle of the street; but there is no evidence that either of the ten-foot strips on the sides had been so worked, although it was shown that the public had constantly walked over these ten-foot strips as a route of travel. In the meantime Adams acquired from one claiming under Dyer a lot fronting Ohio Avenue, and he and his predecessors in title had improved that portion of the ten-foot strip immediately in front of his lot, had planted shrubbery and trees thereon, and had kept the strip improved as a sidewalk, claiming to have been in the open, peaceable, and notorious possession of the same since July 23, 1914.

In order to make a dedication complete on the part of the public as well as the owner, there must be an acceptance of the dedication ·by the public or the proper local authorities. 1 Elliot's Roads and

Streets (4th ed.), § 165; *Georgia Railroad & Banking Co.* v. *Atlanta,* 118 *Ga.* 486 (2) (45 S. E. 256). A frequent way of showing such acceptance by the public in the case of a road or street is to prove that the proper authorities assumed control over such road or street, as by having it worked, graded, or paved. *Parsons* v. *Trustees,* 44 *Ga.* 529, 539; *Mayor &c. of Americus* v. *Johnson,* 2 *Ga. App.* 378 (58 S. E. 518), and cit.

The controlling question here presented is whether the county, having worked, used, and kept up as a public road a strip thirty feet wide, running longitudinally along the center of the fifty-foot street that was dedicated, has thereby shown an acceptance of the whole width of the street which comprised the dedication. In principle, the instant case is in this respect governed by the ruling made in *Norrell* v. *Augusta Railway & Electric Co.,* 116 *Ga.* 313 (42 S. E. 466, 59 L. R. A. 101). There the dedication was made by deed. Here it was effected by another writing, but just as definite in its terms. There the strip, 70 feet in width, was conveyed by the owner to the county authorities for use as a public street. The county authorities accepted this deed and immediately proceeded to locate a road only 35 feet wide. Possession of the unused portion of the 70 ft. strip was retained by the person who had conveyed the whole to the county. About five years after such conveyance he conveyed this unused portion of the strip to Hight, and Hight conveyed to another person who remained in continuous possession for fifty-five years. The city limits of Augusta were so extended as to include this land, and the municipal authorities authorized the railroad to lay a spur-track across it from an adjoining street. The railroad took possession of the entire portion of the unused strip, and was sued in trespass by the remote grantee of the original dedicator. This court held that he could not recover. We quote from the opinion: "There is also no doubt that when the city limits of Augusta were extended so as to include this land, the road became a city street, and the city succeeded to the rights and jurisdiction of the county over it. We are also clear that by the acceptance of the deed the authorities accepted the entire tract conveyed by Thomas [the dedicator], and there can arise in this case no question as to an acceptance of only such part of the land as was actually used. The entire tract was accepted by the acceptance of the deed, and the failure to use all of it immediately was

not such an act as could be construed as an abandonment of the unused portion." A similar ruling was made in *Ellis* v. *Mayor &c. of Hazlehurst*, 138 *Ga.* 181 (75 S. E. 99), where the dedication was not made by deed direct to the public authorities, as was done in the *Norrell* case, supra. It was there held: "Where the extent of the grant is defined by the landowner himself in his statement making an express dedication to a municipality, it is not necessary that the public authorities should work the entire street within the confines of the grant, to make effectual the act of acceptance. Any improvements or repairs done on the street by the public authorities in recognition of the dedication of a defined strip of land for a street may be regarded as an acceptance of the dedication. 1 Elliott on Roads and Streets, §§ 167, 168. The distinction should be noted between acts of user when solely relied on to raise an implication of a dedication, and acts of user as evidencing an acceptance of an express dedication. In the former case a dedication will not be implied beyond the use (*Swift* v. *Lithonia*, 101 *Ga.* 706, 29 S. E. 12), while in the latter the dedicator has definitely fixed the limits of the land dedicated to public use, and proof of any acts by the public authorities, done in recognition of the offer of dedication, will be sufficient to imply an acceptance of the dedication." To same effect see *Lastinger* v. *Adel*, 142 *Ga.* 321 (82 S. E. 884); *Atlanta & West Point R. Co.* v. *Atlanta*, 156 *Ga.* 251, 255 (119 S. E. 712). Nothing contrary to what is here decided was determined in *Kelsoe* v. *Oglethorpe*, 120 *Ga.* 951 (48 S. E. 366, 102 Am. St. R. 138), where the question was whether the development and use of one end of a street would show an acceptance of the dedication of the end of the street which had never been opened up or developed or used, but which lay across another street. Nor is there anything decided in *Donalson* v. *Georgia Power & Light Co.*, 175 *Ga.* 462 (165 S. E. 440), by five Justices, that constrains us to take a view contrary to the one now asserted. As was pointed out in *City of Albany* v. *Lippitt*, 191 *Ga.* 756, 762 (13 S. E. 2d, 807), in the *Donalson* case, supra, the city attempted to give the company a right to place its transmission lines upon the land embraced in the offer to dedicate before acceptance by use of any portion of the right of way described in the dedication. In so far as the *Donalson* case may be deemed an authority for a ruling that by the use of a strip thirty feet wide, running longitudinally along the entire length of a street

or road fifty feet in width, dedicated to public use, is not an acceptance of the whole width of the dedication, it will not be followed.

■ It has more than once been held that prescription does not run against a municipality in regard to land held for the benefit of the public. *Norrell* v. *Augusta Railway & Electric Co.*, supra; *Wade* v. *Cornelia*, 136 *Ga.* 89 (70 S. E. 880) ; *Mayor &c. of Savannah* v. *Barnes*, 148 *Ga.* 317, 320 (96 S. E. 625, 9 A. L. R. 419), and cit. Those holdings were not based on a statute, but were brought about by considerations which may be briefly summarized as follows : Prescription does not in any case run against the State ; the city is an agent of the State, exercising within certain limits governmental functions and powers ; a municipal corporation is entrusted with the care and control of its streets for the use and benefit of the public ; and if prescription does not run against the State, it should not run against a city in respect to rights which are entrusted to the city for the benefit of the public generally and as to which it exercises governmental powers. The same line of reasoning applies with equal if not greater force to a county, one of the political subdivisions of the State. Accordingly it must be held that where a street or road has been dedicated to the public and accepted by the proper authorities of the county, no possession by a private individual of a part thereof can ripen into prescription. It follows that no character of possession, for no matter how long, of a portion of the dedicated strip on the part of Adams, which commenced after the time that the county manifested its acceptance of the dedication, could give him any right to interfere with the use thereof by the county for public purposes.

Certain other subsidiary questions are presented, but they need not be expressly ruled upon, since the specific rulings already made are controlling. It was not erroneous to grant the injunction.

*Judgment affirmed. All the Justices concur.*