## 49130. HORNE v. GOVERNMENT EMPLOYEES INSURANCE COMPANY.

PANNELL, Presiding Judge.

On March 6, 1972, during the running of an annual "bathtub race" within the confines of Southern Technological Institute, a "motorized bathtub" left the designated course and struck appellant's decedent, causing injuries which subsequently resulted in her death. Suit was brought to recover medical and funeral expenses under a medical payments provision of a contract of insurance. Defendant's motion for summary judgment was granted and plaintiff appeals. *Held:*

1. Plaintiff enumerates that the court erred in granting the motion for summary judgment. The propriety of the court's action centers about an interpretation of language used in the medical payments provision of the insurance policy in question. Therein, the insurer agreed, in general, to pay the medical and funeral expenses occasioned "through being struck by an automobile or by a trailer of any type." An exclusionary clause denied liability if the insured was injured "while occupying or through being struck by (1) a farm type tractor or other equipment designed for use principally off public roads while not upon public roads. . ."

Initially, we note that this is a "Family Automobile Policy." It defines, inter alia, "Temporary Substitute Automobile," "Private Passenger Automobile," "Utility Automobile," "Farm Automobile," and "Trailer." That the bathtub had wheels, a steering mechanism, motor and brakes is conceded by the parties, but that does not make it an automobile. The latter term is a general name adopted by popular approval of all manner of self-propelled vehicles designed primarily for use on highways and streets and capable of carrying passengers and loads, but it does not connote all manner of motor vehicles. As was said in *Bullard v. Life &c. Ins. Co.,* 178 Ga. 673, 674 (173 SE 855): "In arriving at the true interpretation of a contract, words usually bear their 'usual and common signification.' In common parlance, or according to usual signification of the word, an 'automobile' is not a 'motorcycle.' Both are 'motor driven'

vehicles, but not all 'motor driven' vehicles are 'automobiles' nor are all 'motorcycles.' Had it been the intention of the parties that the insurance should cover accidents in riding a motorcycle, the policies would properly have used the words 'motor-driven vehicles.' " See also *Whiddon v. Cotton States Mutual Ins. Co.,* 109 Ga. App. 137, 138 (135 SE2d 521). The "motorized bathtub" in the instant case was designed and used for the purpose of racing annually on the University's Campus Drive, it clearly was not designed or used primarily for the transportation of persons or property. It is not an "automobile" as that term is used in the contract, although it may be a motor vehicle as defined by Ga. L. 1953, Nov. Sess., pp. 556, 557 (Code Ann. § 68-1502 (1) (b)).

Plaintiff also argues that *if* the "motorized bathtub" falls within the exclusionary clause, supra, because it constituted "other equipment," *it* was being used on a public road. We disagree. The sole purpose for which the bathtubs were designed and operated was for racing on Campus Drive, an elliptical roadway within the confines of the controlled and guarded property of the University, with the entrance and exit accessible only from *Clay* Street, a public roadway, and closed to normal traffic on race days. If Campus Drive is a public roadway, as plaintiff contends, the bathtub then did not constitute "equipment designed for use principally off public roads," for it was designed for special annual use in racing on Campus Drive. Indeed, to hold that the parties intended to insure all manner of vehicles under this policy would strain construction and make the policy more beneficial by extending the coverage contracted for and this we cannot do. *Cotton States Mutual Ins. Co. v. Falls,* 114 Ga. App. 812, 814 (152 SE2d 811); *Prudential Ins. Co. of America v. Kellar,* 213 Ga. 453, 458 (99 SE2d 823). We think that the phrase "designed for use" carries with it the logical connotation of useful purpose, and was intended to cover farm type cultivators, harvesters, harrowers, etc., normally employed in farming and frequently encountered on public roads. It, of course, is axiomatic that if Campus Drive was not a public road the exclusion would apply.

232

*Judgment affirmed. Bell, C. J., Eberhardt, P. J., Clark and Webb, JJ., concur. Deen, Quillian, Evans and Stolz, JJ., dissent.*

ARGUED MARCH 6, 1974 — DECIDED JUNE 13, 1974 — REHEARING DENIED JUNE 28, 1974 —

*Ross & Finch, Charles E. McCranie, A. Russell Blank,* for appellant.
*Dunaway & Haas, John A. Dunaway,* for appellee.

EVANS, Judge, dissenting.

1. The motorized bathtub in this case was an "automobile" as defined by the policy of insurance.

2. Campus Drive, Marietta, Cobb County, Ga., where the fatal injury occurred, is a *public* street; it was constructed by Cobb County, with the consent and approval of the City of Marietta; it is maintained and all repairs are made by Cobb County; and it is dedicated to use by the public.

An insurance company issued a policy of insurance to Clarence Horne, insuring as to medical and funeral expense occasioned "through being struck by an automobile or by a trailer *of any kind.*" (Emphasis supplied.)

In the early part of 1972, Jeannie Jo Horne, daughter of Clarence Horne, was run into and killed by a motorized bathtub during the annual race of such vehicles in Cobb County. She was an invitee on the campus and was present to view the race as the motor vehicles raced along Campus Drive.

Mrs. Jo M. Horne, as administratrix of the estate of her deceased daughter, filed suit against Government Employees Insurance Company to recover the medical and funeral expenses incurred as a result of the homicide.

Defendant answered, denied liability, and contended that the motorized bathtub was not an automobile, and that consequently no insurance was afforded. Its motion for summary judgment was granted, and plaintiff appeals to this court. Does the word "automobile" include a motorized bathtub? The policy does not define au-

tomobile, but uses the general and all-inclusive language "automobile or trailer *of any kind.*" (Emphasis supplied.) If there is any ambiguity in this phrase, it must be construed against the insurer, and construed to mean: "automobile of any kind." Thus, the insurance was effective as to *conventional automobiles, unconventional automobiles, and to automobiles of any type.*

Webster's Collegiate Dictionary defines *automobile* as follows: "A usually 4-wheeled automotive vehicle designed for passenger transportation and commonly propelled by an internal combustion engine using a volatile fuel."

Webster's New International Dictionary, Second Edition, defines *automobile* as follows: ". . . a self-propelled vehicle, suitable for use on a street or roadway; automobiles are propelled by internal combustion engines, steam engines or electrical motors. Automobile—any motor vehicle except a motorcycle."

*Passenger* is defined in Webster's Collegiate Dictionary to mean "a traveller in a public or private conveyance."

The motorized bathtub in this case was equipped as follows: it had four wheels; a steering wheel and mechanism, clutch, brakes, seat belts, roll bar, internal combustion engine, which used gasoline (a volatile fuel); it could attain a speed of 50 miles per hour; it was suitable for, and at time of collision, was being used on a public street or roadway; and it was designed to carry a passenger (the driver). It was *not* a motorcycle.

Thus, according to Webster, this vehicle fully qualified as an *automobile.* It was not a motorcycle, which Webster defines as a two-wheeled motor vehicle. Webster says that *any motor vehicle except a motorcycle is an automobile.*

There can be no doubt that the motorized bathtub here fully fits the definition of an automobile. The burden was on the insurer (movant for summary judgment) *to show that it was not an automobile.* And in case of doubt, the doubt must be resolved in favor of the insured person.

The following authorities are pertinent to this discussion, to wit: If there is any doubt as to whether the policy covered the vehicle in question, that doubt must

be resolved in favor of the insured. *Mutual Life Ins. Co. v. Durden,* 9 Ga. App. 797 (72 SE 295).

If a policy may be construed two ways, the one most favorable to the insured must be adopted. *John Church Co. v. Aetna Indem. Co.,* 13 Ga. App. 826 (80 SE 1093).

The insurance company and its lawyers prepared the insurance contract, and that is one of the reasons why it must be construed most strongly against the insurance company. *Farmers Mut. &c. Co. v. Kilgore,* 39 Ga. App. 528 (147 SE 725).

The insurance policy must be construed most liberally to effect the object to be accomplished and strictly against the insurer. *McLendon v. Carolina Life Ins. Co.,* 71 Ga. App. 557 (31 SE2d 429). (The object to be accomplished was to afford insurance, not to exclude insurance coverage.)

Where the *meaning of the policy is doubtful,* that construction will be adopted which is most favorable to the insured. *Life & Cas. Co. v. Smith,* 53 Ga. App. 838 (187 SE 288); *Am. Cas. v. Callaway,* 75 Ga. App. 799 (44 SE2d 400). (Does the majority feel that the meaning of this policy is *clear; if so was it clear to the purchaser* of the policy at the time the policy was bought? If a great deal of study is required to arrive at the meaning of the policy, then perforce *the meaning is doubtful,* and the question should be resolved in favor of coverage.)

Even though language must be given reasonable construction, still the policy will be liberally construed in favor of the object to be accomplished, and strictly construed against the insurer. *Hart v. Metropolitan Cas. Co.,* 76 Ga. App. 474 (46 SE2d 361).

Any *ambiguity* in an insurance policy must be construed most strongly against insurer and most favorably toward the object to be accomplished, that is, towards insurance coverage. *Hulsey v. Interstate Life &c. Ins. Co.,* 207 Ga. 167 (60 SE2d 353); *Hanover Fire Ins. Co. v. Scroggs,* 92 Ga. App. 548 (88 SE2d 703); *American Motorists Ins. Co. v. Vermont,* 115 Ga. App. 663 (155 SE2d 675); *Cherokee Credit Life Ins. Co. v. Baker,* 119 Ga. App. 579 (168 SE2d 171).

In this case there is a double reason for strict construction against the insurer and liberal construction

in favor of the insured in this case. This is a motion for summary judgment, granted to the insurer. The law is well known in such cases. Every doubt, every ambiguity, every conclusion, every inference, must be construed in favor of the respondent (the insured), and against the movant (the insurer). *Holland·v. Sanfax Corp.,* 106 Ga. App. 1, 4 (126 SE2d 442); *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178 (2), at 179 (129 SE2d 408); *American Lighting &c. Co. v. Baldwin,* 126 Ga. App. 41, 42 (190 SE2d 82).

In support of its position that this vehicle was not insured under the policy, the majority cite only three cases, none of which is supportive of the issue involved.

The first case cited is *Bullard v. Life & Cas. Ins. Co.,* 178 Ga. 673, 674 (173 SE 855), where the insurance was as to "private motor-driven automobile," the plaintiff was injured while on a *motorcycle.* It was not at all difficult to show that an automobile is not a motorcycle, and that is all that was there decided.

The majority also cites *Whiddon v. Cotton States Mut. Ins. Co.,* 109 Ga. App. 137, 138 (135 SE2d 521), which is another case holding that a motorcycle is not an automobile, exactly as was done in *Bullard,* supra.

The third and final case cited by the majority is *Cotton States Mut. Ins. Co. v. Falls,* 114 Ga. App. 812, 814 (152 SE2d 811), which is as to whether insurance on one described vehicle may be effective when the insured is driving a different vehicle. It is not clear as to what point this proves, but it has absolutely no applicability or relevancy to the case sub judice.

So we repeat, not a one of these cases supports the majority opinion.

While the majority opinion does not clearly so state, it is implied therein that an exclusion in the policy may let the insurance company out. The exclusion clause provides that insurance coverage will not be afforded: ". . . to *other equipment* designed for use principally *off public roads.* "

In the first place, we respectfully insist that this motorized vehicle *is an automobile;* and if this contention is correct, that ends the case. No occasion or right would exist to consider "other equipment" if the motorized

bathtub, under the definition and law cited, is an automobile.

But pretermitting this point, this motorized bathtub was designed for use principally and exclusively on Campus Drive, a *public* street in the City of Marietta, Cobb County, Georgia, which intersects Clay Street, and is the principal artery of traffic for the public and for the college through the campus. We repeat that this is a *public* street. A resolution by the Cobb County Road Commissioners was introduced showing that Cobb County furnished same. The depositions of Lewis G. Van Gorder, Dean of Student Affairs of Southern Tech, were taken, and he testified as follows: This street — Campus Drive — was constructed by the county; its main entrance is left open continually; Cobb County has improved the road and sidewalk when needed; that is Cobb County's responsibility — to improve this street; it is the one and only street through the campus; the college expects and anticipates that it will be used by visitors, parents, friends, mail delivery, delivery of supplies, food, etc. From time to time some people drive through the campus on sightseeing trips, with no particular mission; the public can come onto the campus whether on legitimate business or not, with no problem; any member of the public can do so; Cobb County has the responsibility to come in and do the repairs if they are necessary. (Tr. pp. 66-82).

On the day of the race, Campus Drive was closed so that only the automobile-tub racers could use it. Of course, this would not change its public character any more than would the temporary closing of a street by a municipality while repairs are being made and traffic is rerouted.

There can be no question whatever but that Campus Drive is a public street. Code Ann. § 68-1504 (1a) defines a street or highway as follows: "The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." The Supreme Court of Georgia, in *Moon v. City of Conyers,* 222 Ga. 526, 527 (150 SE2d 873), holds: "In *Adams v. Richmond County,* 193 Ga. 42, 48 (17 SE2d 184) it was held that: '[A] frequent way

of showing such acceptance by the public in the case of a road or street is to prove that the proper authorities assumed control over such road or street, as by having it worked, graded, or paved.' Furthermore, as held in *Mayor &c. of Macon v. Franklin,* 12 Ga. 239, 244 (3): '[T]here is no particular form of making a dedication. It may be done in writing, or by parol; or it may be inferred from his acts, or implied, in certain cases, from long use. A grant is not necessary to create it.' "

The record in this case shows: 1. The motorized bathtub in this case was an "automobile" as defined by the policy of insurance. 2. The policy of insurance provided coverage if struck by *an automobile of any kind.* 3. As to the insurer's contention that the vehicle was "other equipment designed for use principally off public roads": a. First of all, if it was an automobile as defined by the policy, we can not look to *"other equipment."* b. But assuming, arguendo, that we could consider "other equipment," this vehicle was not designed for "use principally off public roads" — but was designed for use on Campus Drive, which was clearly shown to be a public street and highway.

I am authorized to state that Judges Deen, Quillian and Stolz join in this dissent.